**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| HENRY BOUNPHASAYSONH,    ) | |
|    ) | |
|    Plaintiff,    ) | |
|    ) | |
|    v.    ) | |
|    ) | |
| THE TOWN OF WEBSTER, TIMOTHY    ) | **No. 4:19-CV-40085-TSH** |
| BENT, DOUGLAS C. WILLARDSON,    ) | |
| MICHAEL SHAW, JAMES HOOVER,    ) | |
| AND DONALD D. BOURQUE,    ) | |
|    ) | |
|    Defendants.    ) | |

**Report and Recommendation**
**March 1, 2021**

Hennessy, M.J.

     This matter comes before the Court on the motion of the Town of Webster ("the Town") Timothy Bent, Douglas C. Willardson, Michael Shaw, James Hoover, and Donald D. Bourque ("Defendants") for judgment on the pleadings. [Dkt. No. 30]. Plaintiff Henry Bounphasaysonh has filed an opposition to the motion. [Dkt. No. 35]. This matter was referred to me on December 3, 2020 and is now ripe for adjudication. [Dkt. No. 38]. For the reasons that follow, I recommend the motion for judgment on the pleadings be ALLOWED in part and DENIED in part.

A.    FACTUAL BACKGROUND

     Plaintiff Henry Bounphasaysonh, a resident of the Town of Webster, is of Laotian descent. [Dkt. No. 12 ("Am. Compl.") ¶¶ 6, 20]. Starting in 2015, Plaintiff applied to join the Webster Police Department ("WPD"). [Id. ¶ 28]. In April 2015, he scored 96 out of 100 on the Massachusetts Civil Service exam. [Id.] In November 2015, the Massachusetts Human Resources

Division ("HRD") ranked Plaintiff fourth among candidates willing to accept a position as a police officer.  [Id. ¶ 29].

In Massachusetts, the civil service test score is one of the primary factors for determining eligibility for hiring.  See Mass. Gen. Laws ch. 31 § 25.  A police department must keep a list of priority candidates, ranked by test scores and qualifications.  Id.  When a police department hires a candidate "other than the qualified person whose name appears highest" on the list, that police department must submit a publicly-available statement of reasons for that decision.  Id. § 27.  This document is called a "bypass."  Bypassed candidates may appeal to the Massachusetts Civil Service Commission ("Commission").  Id. § 2(b).  In reviewing a bypass, "[t]he Commission is charged with ensuring that the system operates on 'basic merit principles.'"  Massachusetts Ass'n of Minority Law Enf't Officers v. Abban, 434 Mass. 256, 259 (2001) (quoting Mass. Gen. Laws ch. 31 § 1) (alterations omitted).

A.    Interviews and Bypasses for the Job

In January 2016, Defendants Bent, Shaw, and Hoover, among others, interviewed Plaintiff for a position as a police officer with the WPD. [Am. Compl. ¶ 32].  Bent later described this interview as "horrendous," and, with Shaw, recommended denying Plaintiff the position.  [Id. ¶¶ 33–35].  The Town bypassed Plaintiff on January 25, 2016, giving him the following reasons:

- failed to take advantage of promotional opportunities with prior employers, UPS and CVS;

- received less than stellar performance reviews from prior employers;

- untruthfully stated he had resigned from his part-time town beach parking lot job via a telephone call when he had actually done so by text message;

- untruthfully stated he personally filled out a job application to the Town that had actually been filled out by his girlfriend; and

- gave the "worst interview ever."

2

[Id. ¶¶ 34, 36; Dkt. No. 32-1; Dkt. No. 12-1 at 4]. Instead, the Town hired a lower-ranked non-minority applicant. [Am. Compl. ¶ 33; Dkt. No. 32-1]. In May 2016, Plaintiff again applied to the WPD and was placed at the top of the HRD list of eligible applicants. [Am. Compl. ¶ 39]. In November 2016, Bent again notified Plaintiff that he had been bypassed in favor of a lower-ranked non-minority applicant, stating he was not called in for a second interview because of his "horrendous" first interview and purported dishonesty. [Id.]. Plaintiff alleges Willardson approved of this bypass, and Selectman Bourque "communicated his endorsement" of it. [Id. ¶¶ 41–44].

B.   Civil Service Commission

In January 2017, Plaintiff appealed to the Commission contesting the Town's decision to bypass him a second time. [Id. ¶ 45]. Defendants Bent, Shaw and Hoover testified, and the parties submitted exhibits. [Dkt. No. 12-1 at 2]. While this appeal was pending, Plaintiff was again bypassed in favor of two lower-ranked non-minority applicants. [Id. ¶ 46; Dkt. No. 32-3]. Further, Plaintiff alleges that after he filed his appeal, the Town, without notifying Plaintiff of openings, hired at least five new police officers. [Id. ¶ 49]. On February 1, 2018, the Commission unanimously determined that the Town's reasons for denying Plaintiff employment seemed to be "based on false premises, unreliable hearsay, miscommunication and sloppiness," further finding that Town officials themselves had made false statements. [Id. ¶ 50; Dkt. No. 12-1 at 12–14].

In the decision, the Commission evaluated the stated reasons for Plaintiff's bypass. [Dkt. No. 12-1 at 3–4]. First, as to Plaintiff's alleged dishonesty, the Commission considered the two alleged lies plaintiff told: (1) that Plaintiff had quit a seasonal job with the Town by phone, when in reality he had texted his resignation; and (2) that Plaintiff had completed a Town job application, when his girlfriend did so for him. [Id. at 12, 14]. The Commission found that both claims of dishonesty

3

were unfounded.  The Town provided no evidence that Plaintiff ended his seasonal employment through a text.  [Id. at 12–13].  As to the job application, the Commission noted Plaintiff completed separate applications in 2011 and 2012, in accordance with the Town's requirement of annual applications for seasonal jobs.  [Id. at 14].  Plaintiff acknowledged that his girlfriend completed the 2011 job application; it was undisputed that Plaintiff completed the 2012 application.  [Id].  However, the Commission found that it was unclear which application was produced at the interview, and Plaintiff assumed it was his most recent application.  [Id. at 15].

As to the Town's finding that Plaintiff had shown a lack of initiative in his prior jobs, the Commission noted that Plaintiff worked at those jobs while completing his bachelor's degree and then looking for post-graduate employment, and found that the Town "somehow converted these reasonable, and, arguably, commendable, decisions by Mr. Bounphasaysonh into a narrative to describe Mr. Bounphasaysonh as someone who lacks initiative or a desire for personal growth." [Id. at 17].

Lastly, the Commission found a lack of evidence for assessing Plaintiff's interview as the "worst ever."  [Id. at 17-18].  The interview was not recorded, and the Town failed to produce notes, rating sheets, or other evaluative materials to support the assessment.  [Id. at 18].  Further, the interview panel had relied on a "scenario" question not included on the list of interview questions the Town submitted to the Commission, and the recollection of the panelists regarding this scenario question conflicted.  [Id.].  The Commission ordered the Town to place Plaintiff "at the top of the next Certification issued to the Town of Webster for position of permanent intermittent police officer until such time as he is appointed or bypassed . . .  [i]f Mr. Bounphasaysonh is appointed, he shall receive the same civil service seniority date as those candidates appointed from Certification No. 03783." [Id. at 18–19].

4

C.     Plaintiff's Harm

To this date, Defendants have failed to obey the order from the Commission.  [Id. ¶ 84].
Plaintiff alleges that he continues to suffer financial loss because his current occupation provides
substantially less salary than he would have make as a WPD officer.  [Id. ¶ 102].  He further claims
emotional distress, mental suffering, and loss of experience, advancement, and personal
satisfaction.  [Id. ¶¶ 101, 104].

D.     Racial Disparity

In addition to the bypasses of his applications, Plaintiff alleges the Town has not hired any
minority police officers and that in a town whose population is 20% minority, the entire police
force is Caucasian.  [Am. Compl. ¶ 78].  He further alleges that the HRD list has on it several
applicants, including himself, who are members of protected racial groups, but that every WPD
hire was a lower-ranked white person.  [Id. ¶¶ 75, 80].  Finally he asserts that discriminatory hiring
is a de facto policy of the WPD, and Willardson and Bourque were aware of it "at all times."  [Id.
¶ 44]. [1]

D.     Procedural History

Plaintiff filed complaints with the Massachusetts Commission Against Discrimination
("MCAD") and the Equal Employment Opportunity Commission ("EEOC") on November 30,
2018.  [Id. ¶ 14].  He timely notified both agencies of his intention to file suit in federal court, and
the EEOC issued a right-to-sue letter on May 2, 2019.  [Id. ¶ 15].  Plaintiff filed the instant action
on June 24, 2019, alleging discrimination and retaliation under Title VII, 42 U.S.C. § 2000e-2(a)

---

[1] In addition to the following allegations, Plaintiff alleges incidents involving his father in law, former Town Selectman Mark Dowgiewicz, and his legal battles with Bent and Willardson.  [Am. Compl. ¶¶ 95–100].  He also alleges the Bent, Shaw, and Willardson were involved with an investigation into another officer's use of force against a black man.  [Id. at 91–94].  I do not see how either incident is relevant to Plaintiff's other allegations of discrimination, and I therefore decline to address them.

and Mass. Gen. Laws. ch. 151B § 4 [Id., Counts I-VI]; discrimination, Monell liability, conspiracy, and failure to intervene by Willardson under 42 U.S.C. §1983 [Id., Counts VI-X]; and a common law claim of civil conspiracy [Id., Count XI].  Plaintiff's amended complaint incorporates all allegations into each claim. [See id., Counts I-XI].[2]  I therefore infer that each claim incorporates each instance of Defendants refusing to hire Plaintiff.

## II.   LEGAL STANDARD

Pursuant to Federal Rule of Civil Procedure 12(c), a party may move for judgment on the pleadings "[a]fter the pleadings are closed – but early enough not to delay trial."  Fed. R. Civ. P. 12(c).  A court reviews motions for judgment on the pleadings under a standard that is essentially the same as that for a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), except that "[a] Rule 12(c) motion, unlike a Rule 12(b)(6) motion, implicates the pleadings as a whole." Aponte-Torres v. Univ. of P.R., 445 F.3d 50, 54–55 (1st Cir. 2006).  Facts contained in the pleadings are viewed in the light most favorable to the nonmovant, and all reasonable inferences are drawn in its favor.  Zipperer v. Raytheon Co., 493 F.3d 50, 53 (1st Cir. 2007).  In reviewing a motion under Rule 12(c), the court may consider "documents the authenticity of which are not disputed by the parties; documents central to the plaintiff's claim; and documents sufficiently referred to in the complaint."  Curran v. Cousins, 509 F.3d 36, 44 (1st Cir. 2007) (quoting Watterson v. Page, 987 F.2d 1, 3 (1st Cir. 1993)) (alterations omitted).  "Judgment on the pleadings is proper 'only if the uncontested and properly considered facts conclusively establish the movant's entitlement to a favorable judgment.'"  Zipperer, 493 F.3d at 53 (quoting Aponte-Torres, 445 F.3d at 54).

## III.   DISCUSSION

---

[2] This is excepting Plaintiff's claim for failure to intervene, as it only applies to Willardson's conduct.  [Am. Compl. Count VIII].

6

Defendants make four arguments in support of their motion for judgment on the pleadings: (1) the officers are immune from suit; (2) the claims are precluded by the Commission ruling; (3) the claims are time barred and unexhausted; and (4) Plaintiff fails to state a claim on the merits. I address each in turn.

      A. Immunity

The Town argues that the officers cannot be held liable for refusing to hire Plaintiff because the entire hiring process is covered by testimonial immunity. I disagree.

"A witness is absolutely immune from liability under § 1983 as to claims based on the testimony given at a judicial or administrative proceeding, even if the testimony is knowingly and intentionally perjurious." Cignetti v. Healy, 967 F. Supp. 10, 14 (D. Mass. 1997). However, "[t]he law draws a distinction between holding a speaker liable for the content of [his] speech, on the one hand, and using that speech as evidence of [his] misconduct, on the other." 58 Swansea Mall Drive, LLC v. Gator Swansea Prop., LLC, No. CV 15-13538, 2016 WL 5946872, at *1 (D. Mass. Oct. 12, 2016). Defendants overlook this important distinction. They maintain that the process of hiring Plaintiff was entirely protected by a testimonial immunity because each action, including the initial decision to bypass Plaintiff, was "within the civil service framework." [Dkt. No. 31 at 8]. However, Plaintiff does not seek to hold any of the testifying defendants liable for testimony. Instead, his suit targets the non-testimonial conduct which no doubt was the subject matter of such testimony: Defendants' allegedly discriminatory refusal to hire him. That conduct may have been the subject of the Commission proceeding, but it is not immune from legal scrutiny. Compare Lumpkin v. Lucey, No. CIVA 09-11921, 2010 WL 1794400, at *4 (D. Mass. May 4, 2010) (Finding a DEA agent immune from a § 1983 claim for falsely testifying against the plaintiff) with Limone v. United States, 271 F. Supp. 2d 345, 366 (D. Mass. 2003), aff'd in part, remanded in part

sub nom. Limone v. Condon, 372 F.3d 39 (1st Cir. 2004) (finding officers not immune from a conspiracy claim "where defendants engaged in a variety of actions, only some of which were directly tied to immunized trial testimony.").

It is because of this distinction between testimony and non-testimonial acts that Defendants' reliance on Cignetti is misplaced.  In Cignetti, a firefighter sued his employer and officials for allegedly willful misrepresentation in testimony at the disciplinary proceedings.  967 F. Supp. at 13–14.  The Court held that "[a] witness is absolutely immune from liability under § 1983 as to claims based on the testimony given at a judicial or administrative proceeding."  Id. at 14 (emphasis added).  Here, unlike Cignetti, Plaintiff is not suing for testimonial representations, but for conduct that, it happens, was the subject of testimony before the Commission.

Defendants also argue that decisions to bypass Plaintiff are within the scope of the "absolute privilege" which "protects statements made in connection with, or in contemplation of, judicial or administrative proceedings."  [Dkt. No. 32 at 9].  In their view, such hiring decisions were akin to communications preparing for litigation, and those communications are therefore protected by absolute privilege.  Again, I disagree.  "[T]he common law provide[s] absolute immunity from subsequent liability for all persons—governmental or otherwise—who were integral parts of the judicial process."  Briscoe v. LaHue, 460 U.S. 325, 335 (1983).  The privilege includes witnesses and attorneys and extends to quasi-judicial administrative proceedings.  See id. at 342 n.28.   "Defendants have the burden of demonstrating the privilege applies."  Hayes v. Mirick, 378 F. Supp. 3d 109, 114 (D. Mass. 2019).

Here, a common-sense assessment undermines any claim that the Town's hiring decisions regarding Plaintiff were part of judicial proceedings, or that the hiring process "seriously contemplated a judicial proceeding in good faith."  Smith v. Suburban Restaurants, Inc., 374 Mass.

528, 531 (1978).  To the contrary, Plaintiff was the one to initiate the Commission and judicial proceedings and Plaintiff did so after at least two bypass decisions, at a time when Defendants had no reason to believe such proceedings would follow.  See id. (denying the privilege where the judicial proceedings relied on the plaintiff's conduct).  The cases on which Defendants rely are distinguishable.  In Visnick v. Caulfield, 73 Mass. App. Ct. 809 (2009),  Caulfield, a hotel employee accused her superior, Visnick, of sexually harassing her.  Id. at 809–10.  Caufield sent a letter to the hotel, threatening legal action and detailing Visnick's conduct.  Id.  Caufield's complaints were settled.  Id.  Visnick then sued Caufield for defamatory statements in the letter. Id. at 811.  The court held that Caufield was protected by the absolute litigation privilege because "[t]he letter clearly contained statements made preliminary to a contemplated judicial proceeding, . . . and related to a proceeding which is contemplated in good faith and . . . under serious consideration."  Id.  (quotations omitted).  Similarly, Sriberg v. Raymond, 370 Mass. 105 (1976), concerned a letter threatening suit.  Id. at 106–07.  The court dismissed plaintiff's claim of libel because the letter "relate[d] to a proceeding which is contemplated in good faith and which is under serious consideration."  Id. at 109.  Here, the hiring decisions did not relate to, or in good faith contemplate, a judicial or quasi-judicial proceeding.

Thus, Defendants have failed to meet their burden of proving that testimonial immunity or litigation privilege applies.

B.    Preclusion from Civil Service Commission for § 1983 Claims

Defendants move to dismiss Counts VII through XI, arguing that Plaintiff is precluded from raising the §1983 and common law claims in those counts because he did not raise discrimination claims, when he could have, before the Commission.  I disagree.

Applying federal common-law preclusion principles, the Court has held that an agency's fact findings may preclude re-litigation of the facts in a §1983 action. See Univ. of Tenn. v. Elliott, 478 U.S. 788, 799 (1986); see also Tuper v. N. Adams Ambulance Serv., Inc., 428 Mass. 132, 135 (1998) (quoting Stowe v. Bologna, 415 Mass. 20, 22 (1993)) ("[A] final order of an administrative agency in an adjudicatory proceeding . . . precludes relitigation of the same issues between the same parties, just as would a final judgment of a court of competent jurisdiction.").  Moreover, "[c]laim preclusion makes a valid, final judgment conclusive on the parties and their privies, and prevents relitigation of all matters that were or could have been adjudicated in the action." Blanchette v. Sch. Comm. of Westwood, 427 Mass. 176, 179 n.3 (1998) (emphasis added).  Claim preclusion has three elements: "(1) the identity or privity of the parties to the present and prior actions, (2) identity of the cause of action, and (3) prior final judgment on the merits." Kobrin v. Bd. of Registration in Med., 444 Mass. 837, 843 (2005) (quoting DaLuz v. Dep't of Corr., 434 Mass. 40, 45 (2001)).

Claim preclusion is an affirmative defense, not a jurisdictional issue. SBT Holdings, LLC v. Town Of Westminster, 547 F.3d 28, 36 (1st Cir. 2008).  "[A] properly raised affirmative defense can be adjudicated on a motion to dismiss so long as (i) the facts establishing the defense are definitively ascertainable from the complaint and the other allowable sources of information, and (ii) those facts suffice to establish the affirmative defense with certitude." Id. (quoting Rodi v. S. New Eng. Sch. of Law, 389 F.3d 5, 12 (1st Cir.2004)) (footnote omitted).   The burden is on Defendants to make this showing. Id.

Defendants have not met their burden of proving that the Commission proceedings had a preclusive effect on Plaintiff's §1983 or common law claims.  First, they have failed to provide any legal justification or authority for the proposition that appellants must raise or forfeit all

discrimination and tort claims in a Commission proceeding—a proposition that would have serious preclusion implications for litigants generally.  Defendants identify two cases, placed before the Commission, that address potential discrimination in hiring.  See McManus v. Waltham Fire Department, CSC No. G1-19-024, 2020 WL 1182480, at *12-13 (Feb. 27, 2020) (analyzing Chapter 151B to evaluate the propriety of an employment decision); DuVal v. City of Somerville, CSC No. G1-16-082, 2017 WL 6818206, at *18-19 (December 7, 2017) (analyzing Chapter 151B and the Americans with Disabilities Act ("ADA")).  In these decisions, the Commission does not purport to adjudicate discrimination claims on the merits, but merely uses Chapter 151B and the ADA as a basis to determine whether bypass decisions were proper.  McManus, 2020 WL 1182480, at *12-13; DuVal, 2017 WL 6818206, at *18-19.  Indeed, contrary to Defendants' argument, the Commission's role is "relatively narrow in scope: reviewing the legitimacy and reasonableness of the appointing authority's actions."  City of Beverly v. Civil Serv. Comm'n, 78 Mass. App. Ct. 182, 187 (2010); see Alvarez v. City of Lowell, No. 02-4841, 2005 WL 2864250, at *3 (Mass. Super. Sept. 30, 2005) (noting that Commission lacks jurisdiction over Chapter 151B claims).

However, even if this were not the case, Defendants fail to show that the Commission proceeding and the instant federal suit involve the same parties, nor could they.  Plaintiff's appeal to the Commission proceeded against one party, the Town of Webster.  Plaintiff's federal suit proceeds against not only the Town, but police officers and the Town administrator in their individual capacities.  See Goldstein v. Galvin, 719 F.3d 16, 23 (1st Cir. 2013) (noting that the same officers sued in their official capacities are different parties when sued in their individual capacities).

11

In light of these considerations, I find that Defendants have not met their burden of showing that Plaintiff's §1983 and common law claims are precluded.

C.      Timeliness and Exhaustion

Defendants next assert that Plaintiff's claims are untimely, and that Plaintiff failed to exhaust all of his administrative remedies.  [Dkt. No. 31 at 12–16].  Defendants are correct that some events Plaintiff alleges are time-barred, and that Plaintiff failed to exhaust his remedies as to Bourque. Nevertheless, Plaintiff alleges timely incidents as to each claim, and I recommend the motion for judgment on the pleadings at to be ALLOWED as to Counts I-VI against Bourque only and DENIED otherwise.

1.      Administrative Filing

Defendants assert that Plaintiff's filings with the MCAD and the EEOC were untimely because he filed more than 300 days after the alleged discrimination occurred, and therefore his discrimination and retaliation claims are administratively time-barred.  I disagree.  As discussed below, these filings rely on timely, discrete incidents of discrimination.

A plaintiff asserting claims under Title VII or Chapter 151B must file an administrative claim with the EEOC or the MCAD within 300 days of the alleged discriminatory conduct.  42 U.S.C. § 2000e-5(e)(1); Mass. Gen. Laws ch. 151B §5; see also Nat'l R.R. Passenger Corp. v. Morgan, 536 U.S. 101, 110 (2002); Pelletier v. Town of Somerset, 458 Mass. 504, 512 n.16 (2010). Here, Plaintiff filed his charge with the MCAD and the EEOC on November 30, 2018, so his 300 day window extends to February 3, 2018. [3]  [Am. Comp. ¶ 14].  He alleges that Defendants unlawfully discriminated against him when bypassing his job applications on January 25, 2016

_____

[3] Plaintiff seems to have calculated the 300 day time period differently than the Court.  [Dkt. No. 35 at 7].  This distinction is irrelevant, as it does not change the timeliness of any of Plaintiff's claims.

12

[Am. Compl. ¶ 34]; November 8, 2016 [Id. ¶ 38]; March 29 2017 [Id. ¶ 42]; and after the Commission decision on February 1, 2018 [Id. ¶ 80].

Despite this chronology, Plaintiff suggests that the continuing violation doctrine applies and preserves his otherwise untimely allegations.  An exception to the 300-day filing period, the continuing violation doctrine allows a late filing where there was a continuous pattern of discrimination and at least one anchoring act within the filing period.  Nat'l R.R. Passenger Corp., 536 U.S. at 114.  On the other hand, "[d]iscrete acts such as termination, failure to promote, denial of transfer, or refusal to hire are easy to identify," and become actionable on the day they occur.  Id. at 113, 114; Ayala v. Shinseki, 780 F.3d 52, 56 (1st Cir. 2015).  Thus in such cases, the doctrine does not apply.  Everett v. 357 Corp., 453 Mass. 585, 606 (2009) (noting discrete acts are outside the continuing violations doctrine under Massachusetts law).

The continuing violation doctrine is inapplicable here because each bypass constitutes a discrete act of discrimination that was actionable at that time of the conduct.  Nat'l R.R. Passenger Corp., 536 U.S. at 114-15.  Indeed, Defendants' refusal to hire Plaintiff is the quintessential example of a discrete act that is actionable at the time of the conduct.  See id. at 114 (using "refusal to hire" as a clear example of a discrete act); Miller v. N.H. Dep't of Corr., 296 F.3d 18, 22 (1st Cir. 2002) (same); Shervin v. Partners Healthcare Sys., Inc., 2 F. Supp. 3d 50, 64 (D. Mass. 2014), aff'd, 804 F.3d 23 (1st Cir. 2015) (same).  Therefore, any claim of discrimination under Title VII or Chapter 151B based exclusively on conduct which occurred prior to the 300 day limit (in this case, the failure to hire Plaintiff on January 25, 2016; November 8, 2016; and March 29 2017) is time-barred.

However, as previously mentioned, in the Amended Complaint, Plaintiff incorporates into each claim the entirety of events that occurred between January 2016 and June 2019.  [Am. Compl.,

Counts I-VI].  None of his discrimination and retaliation claims is based on a single, discrete incident.  Further, He alleges Defendants have "refused to obey the February 1, 2018 order of the [Commission] by continuing the practice they adopted after Bounphasaysonh's appeal . . . ignoring their duty to hire officers off the HRD lists ranking applicants for permanent intermittent positions."  [Id. ¶ 84].  He further alleges that after the Commission's February 1, 2018 Order, the Town stopped hiring officers from the HRD list, but nevertheless hired at least five more officers without notice to Plaintiff.  [Id. ¶¶ 72–74].  Finally, Plaintiff alleges Defendants "bypassed plaintiff a total of at least nine times to appoint lower ranked Caucasian applicants to the WPD, including at least 8 appointments within the last three years."  [Id. ¶ 85].  Based on the generous standard afforded to Plaintiff at this point in the proceedings, I find the Amended Complaint sufficient to allege discrete, timely incidents of discrimination.  Zipperer, 493 F.3d at 53 (making all reasonable inferences in favor of the non-moving party).  I therefore recommend that Counts I-VI survive this motion, as they are supported by timely claims of discrimination.

### 2.    Claims Against Bourque

Defendants further assert that the claims against Bourque are unexhausted because Plaintiff did not mention him in his MCAD complaint.  As previously stated, a plaintiff bringing claims under Title VII or Chapter 151B must first exhaust his administrative remedies with the MCAD or the EEOC.  42 U.S.C. § 2000e-5(e)(1); Mass. Gen. Laws ch. 151B, § 5.  It also requires exhaustion as to each defendant.  Hohmann v. Seyfarth Shaw LLP, No. CV 18-10027, 2018 WL 2271014, at *1 (D. Mass. May 17, 2018).  Even if not explicitly charged, the claim may still be valid "if 'the charge put[s] that party's conduct at issue and if the party was on notice of the charge and had an opportunity to participate in the MCAD proceeding.'"  Preston v. Second Wind, Inc.,

824 F. Supp. 2d 247, 250–51 (quoting <u>Chatman v. Gentle Dental Center of Waltham</u>, 973 F. Supp. 228, 234 (D.Mass.1997)).[4]

Plaintiff has failed to show that he has exhausted his administrative remedies as to Bourque. While it is true that an administrative charge may provide notice to a person not named as a party, that is not the case here.  Plaintiff was represented by Counsel when he filed his complaint with the MCAD and the EEOC, [<u>See</u> Dkt No. 32-9 at 5], and in his 13-page complaint filed with the MCAD, he names the other individual defendants and the Town, but does not address a single incident involving Bourque.  [<u>Id.</u> at 8–20]; <u>see</u> <u>Preston</u>, 824 F. Supp. 2d at 251 (finding a defendant barred where the plaintiff did not name him in the MCAD complaint).  Given the detail in Plaintiff's MCAD complaint, Bourque's conspicuous absence would not put him on notice of Plaintiff's discrimination claim against him.  Because Plaintiff has not exhausted administrative remedies with respect to Bourque, I recommend Bourque be dismissed as to Counts I-VI.

3.      <u>Three Year Limitations Period</u>

Next, Defendants assert that the action is time-barred by the three-year statute of limitations.  "[A] defendant successfully raises a statute of limitations affirmative defense when 'the facts establishing the defense [are] clear on the face of the plaintiff's pleadings.'" <u>Diaz-Rivera v. Supermercados Econo, Inc.</u>, 22 F. Supp. 3d 146, 150 (D.P.R. 2014) (quoting <u>Trans–Spec Truck Serv., Inc. v. Caterpillar Inc.</u>, 524 F.3d 315, 320 (1st Cir.2008)).  In Massachusetts, any tort claim or §1983 action must be brought within three years of its date of accrual.  <u>See also</u> <u>Owens v. Okure</u>, 488 U.S. 235, 241 (1989) (holding that §1983 claims have the same statute of limitations as a personal injury action within that state); Mass. Gen. Laws Ann. ch. 260, § 2A ("Except as

---

[4] Plaintiff does not address this argument, other than to aver that "normal relation rules apply, and therefore [Bourque] should not be dismissed."  [Dkt. No. 35 at 8].

otherwise provided, actions of tort . . . shall be commenced only within three years next after the cause of action accrues.").

Plaintiff alleges incidents beginning with his interview in January 2016, [Am. Compl. ¶ 32], and includes in his complaint the WPD's original decision to bypass him on January 25, 2016. [Id. ¶ 34].  He did not file this suit until June 24, 2019.  [Dkt. No. 1].  As a matter of law, any incident of discrimination that occurred before June 24, 2016 is barred.  Kennedy v. Town of Billerica, 502 F. Supp. 2d 150, 155 (D. Mass. 2007), aff'd, 617 F.3d 520 (1st Cir. 2010).

Defendants argue that the entire action is barred because the claim accrued in January 2016, and the Town continued to bypass Plaintiff for the same reasons stated in the January 25 bypass letter. [Dkt. No. 31 at 15–16].  This argument fails for the same reason that Plaintiff cannot invoke the continuing violation doctrine: each refusal to hire is a discrete act.  "[E]ach discrete discriminatory act . . . starts a new clock for filing charges and is treated independently." Svensson v. Putnam Investments LLC, 558 F. Supp. 2d 136, 140 (D. Mass. 2008); Morrison v. N. Essex Cmty. Coll., 56 Mass. App. Ct. 784, 794 (2002); see also Gorelik v. Costin, 605 F.3d 118, 122 (1st Cir. 2010) (applying the continuing violation doctrine to a §1983 claim). Thus, while any actions before June 24, 2016 are barred, any claim that relies on incidents alleged within the three-year period that is not administratively barred is timely and therefore actionable.

A similar theory governs Plaintiff's claims of conspiracy under both §1983 and Massachusetts common law.  A §1983 claim of civil conspiracy accrues with each violation of a plaintiff's civil rights.  Nieves v. McSweeney, 241 F.3d 46, 51 (1st Cir. 2001).  In Massachusetts, a civil conspiracy claim accrues when a plaintiff is injured, "or if the wrong is 'inherently unknowable,' when the plaintiff knows or should know that [he] has been injured."  Pagliuca v. City of Boston, 35 Mass. App. Ct. 820, 824 (1994).  The First Circuit has rejected the "last overt

act" rule, which, like the continuing violation doctrine, allows a claim of conspiracy to accrue in its entirety at the last act.  Kennedy, 502 F. Supp. 2d at 155.  Accordingly, a court "will look separately at each incident to determine whether the plaintiff can ultimately recover for each event under the statute of limitations."  Id.; see also Nieves v. McSweeney, 60 Mass. App. Ct. 1107 (2003) (rejecting the last overt act rule as to a state law claim of civil conspiracy).  Applying this law, each of Plaintiff's claims is supported by timely allegations.

D.      Failure to Allege a Plausible claim

Lastly, Defendants assert that Plaintiff has failed to state a plausible claim.  I turn to the merits of plaintiff's asserted claims: (1) employment discrimination under Title VII and Mass. Gen. Law ch. 151B [Am. Compl., Counts I–II, IV,VI]; (2) racial discrimination under §1983 [Id., Count VII]; (3) and civil conspiracy [Id., Count XI].[5]

1.      Title VII and M.G.L. ch. 151B

Title VII states:

It shall be an unlawful employment practice for an employer . . . to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin.

42 U.S.C.A. § 2000e-2.  Generally, to establish a prima facie case for failure-to-hire under Title VII, a plaintiff must allege "(i) that the plaintiff[] [is a] member[] of a protected class; (ii) that [he was] qualified for the position to which [he] aspired; (iii) [he was] not hired; and (iv) that a person possessing similar or inferior qualifications was hired."  Ahern v. Shinseki, 629 F.3d 49, 54 (1st

---

[5] Defendants do not specifically address Plaintiff's counts of Title VII and Chapter 151B Retaliation, §1983 Monell Liability, §1983 Conspiracy, or §1983 Failure to Supervise.  [Am. Compl. Counts III, V, VIII, IX, X]; [Dkt. No. 31 at 16–17].  Therefore, I recommend the motion for judgment on the pleadings be denied as to these claims.  See Grundy v. HSBC Bank USA, N.A. as Tr. for Registered Noteholders of Renaissance Home Equity Loan Tr. 2006-3, No. CV 17-11449-PBS, 2018 WL 4899459, at *5 (D. Mass. July 16, 2018).

Cir. 2010); see also McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802 (1973) (setting forth the burden-shifting protocol requiring a defendant to respond to a prima facie case with a legitimate, nondiscriminatory reason for denying employment).  "This burden is not onerous . . . Indeed, the prima facie case requires only a 'small showing,' one that is 'easily made.'" Caraballo-Caraballo v. Corr. Admin., 892 F.3d 53, 57 (quoting Kosereis v. Rhode Island, 331 F.3d 207, 213 (1st Cir. 2003) (internal citations omitted).  "This framework governs both state and federal discrimination claims."  Vil v. Price WaterhouseCoopers LLP, No. CIV.A. 11-10780-GAO, 2012 WL 3202852, at *11 (D. Mass. Aug. 2, 2012).

Here, Plaintiff has plausibly alleged discrimination because of his national origin and race. He has sufficiently alleged he is of Laotian descent and that his appearance makes his Laotian heritage obvious.  [Am. Compl. ¶¶ 20, 21].  The fact that Plaintiff is a college graduate and earned a high score on the Massachusetts Civil Service examination shows prima facie that he is qualified. [Id. ¶¶ 24–25, 28].  The Town bypassed Plaintiff for other applicants who were lower ranked and Caucasian.  [Id. ¶ 80, 85].  The Commission found that Defendants did not have legitimate reasons to bypass Plaintiff, and ordered that he be reconsidered.  [Dkt. No. 12-1].  Plaintiff alleges that Defendants still have not considered him for employment, and have failed to even inform him of job openings.  [Am. Compl. ¶¶ 74, 85].  Taking these facts in the light most favorable to Plaintiff, they are sufficient to allege that the WPD discriminated against Plaintiff.  Zipperer, 493 F.3d at 53.

2.    § 1983 Discrimination Claim

Plaintiff has also alleges violation of his constitutionally protected rights under the Equal Protection and Due Process clauses of the Fourteenth Amendment.  "Section 1983 provides for a civil action, including damages, for the deprivation of rights by any 'person' acting under the color

of state law, custom, or usage." Lipsett v. Univ. of Puerto Rico, 864 F.2d 881, 885 n.4 (1st Cir. 1988).  To state a cognizable claim under §1983, a plaintiff must establish: "1) that the conduct complained of has been committed under color of state law, and 2) that this conduct worked a denial of rights secured by the Constitution or laws of the United States." Barreto–Rivera v. Medina–Vargas, 168 F.3d 42, 45 (1st Cir. 1999); Hall v. Capeless, No. CV 19-30138, 2021 WL 217341, at *2 (D. Mass. Jan. 20, 2021).[6]  Plaintiff pleaded a violation of his federally protected rights under two constitutional provisions: (1) the Equal Protection clause, and (2) the Due Process clause.  [Am. Compl. Count VII].  I find Plaintiff has plausibly pleaded a §1983 claim against the individual defendants for violation of the Equal Protection clause, but not for violation of the Due Process clause.

The Equal Protection clause of the Fourteenth Amendment prevents the states from denying "any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV.  To state a claim under the Equal Protection clause, a plaintiff must allege that he or she "was treated differently from others similarly situated . . . based on impermissible considerations.'" Doe1 v. Bos. Pub. Sch., No. 17-CV-11653-ADB, 2019 WL 1005498, at *6 (D. Mass. Mar. 1, 2019) (quoting Clark v. Boscher, 514 F.3d 107, 114 (1st Cir. 2008)).  "The Supreme Court has held that differential treatment based on suspect classifications (race, national origin, religion, or alienage) is subject to strict scrutiny." Id. (quoting Pineiro v. Gemme, 937 F. Supp. 2d 161, 176 (D. Mass. 2013)).  "[A] showing of disparate treatment is a 'threshold requirement' of any equal protection claim." Lu v. Smith, No. 15-cv-14081, 2016 WL 4595206, at *3 (D. Mass. Sept. 2, 2016) (quoting Ayala-Sepulveda v. Municipality of San German, 671 F.3d 24, 32 (1st Cir. 2012)).

---

[6] Defendants do not dispute that they were acting under the color of state law.  [Dkt. No. 31 at 16–17].

Plaintiff, as a person of Laotian descent, is in a protected class based on race and national origin. He has alleged that he was consistently denied employment in favor of less qualified, non-minority applicants. [Am. Compl. ¶ 80, 85]. These allegations are sufficient to plead a prima facie violation of the Equal Protection clause. See Hall, 2021 WL 217341, at *2 (finding a plaintiff's §1983 claim survived a motion to dismiss where he pled disparate treatment in the workplace on the basis of sex).

Defendants are correct, however, that Plaintiff has failed to assert a violation of his Due Process rights. Plaintiff does not specify whether he asserts a due process violation under a theory of procedural due process or substantive due process, but he cannot prevail on either. To plead a violation of substantive due process rights, a plaintiff must assert conduct so egregious "that it may fairly be said to shock the contemporary conscience." Connor B. ex rel. Vigurs v. Patrick, 771 F. Supp. 2d 142, 162 (D. Mass. 2011) (quoting County of Sacramento v. Lewis, 523 U.S. 833, 847 n.8 (1998)). Plaintiff has not pled conduct that meets this high bar. Nor can Plaintiff claim that Defendants violated his procedural due process rights. To prevail, Plaintiff would have to plead a deprivation of a liberty or property interest without notice and "an opportunity to be heard 'at a meaningful time and in a meaningful manner.'" Amsden v. Moran, 904 F.2d 748, 753 (1st Cir. 1990) (quoting Armstrong v. Manzo, 380 U.S. 545, 552 (1965)); U.S. Const. amend. XIV. Plaintiff has no property or liberty interest in a potential employment opportunity. See Stuart v. Roache, 951 F.2d 446, 455 (1st Cir. 1991) (noting that a police officer did not have a property interest in a potential promotion); see also Johnson v. Walgreen, 980 F.2d 721, 1992 WL 357828, at *4 n.8 (1st Cir. Dec. 7, 1992) (finding no property interest in a job opportunity, even where the applicant was qualified). Accordingly, Plaintiff cannot claim a violation of his due process rights.

3.      Civil Conspiracy

Next, Defendants argue that Plaintiff's civil conspiracy claim fails because it is barred by the Chapter 151B exclusivity provision.  I agree.  Mass. Gen. Laws ch. 151B § 9 states in part that "as to acts declared unlawful by [Chapter 151B], the procedure provided in this chapter shall, while pending, be exclusive; and the final determination therein shall exclude any other action, civil or criminal, based on the same grievance of the individual concerned."  Mass. Gen. Laws ch. 151B § 9.  "The SJC has repeatedly held that Chapter 151B, where applicable, 'provides the exclusive remedy for employment discrimination not based on preexisting tort law or constitutional protections.'"  James v. Bos. Police Dep't, No. CV 19-10430, 2020 WL 108266, at *4 (D. Mass. Jan. 9, 2020) (quoting Charland v. Muzi Motors, Inc., 417 Mass. 580, 586 (1994)).  A plaintiff cannot allege a tort that is merely a recast version of his claims under Chapter 151B.  Vergdrager v. Mintz, Levin, Cohn, Ferris, Glovsky & Popeo, P.C., 474 Mass. 382, 415 (2016).

> Here Plaintiff asserts that Defendants
>
> reached agreement among themselves to discount the plaintiff's honesty, integrity and suitability for police work based on unreliable hearsay, falsehoods and on baseless, self-serving conjecture in order to achieve an unlawful purpose by unlawful means i.e., to deny plaintiff employment based on race and/or national origin by fabricating a series of pretexts for their conclusions."

[Am. Comp. ¶ 155] (emphasis added).  As such, his claim of civil conspiracy relies entirely on the discrimination outlawed in Chapter 151B.  See Malloch v. Town of Hanover, No. CIV.A. 08-10412-LTS, 2011 WL 487787, at *9 (D. Mass. Feb. 7, 2011).[7]  "Where a statute provides a specific remedy, an action under a more general provision of law . . . will not lie."  Id.  (dismissing a conspiracy claim where the plaintiff merely repeated his employment discrimination claim).

---

[7] I note that insofar as civil conspiracy is alleged to have had the result of denying Plaintiff's rights under the United States Constitution, Plaintiff has waived such arguments by failing to address it in his opposition.  See Malloch, 2011 WL 487787, at *9 n.12.

Because Plaintiff merely repeated his claims for employment discrimination, I recommend the motion for judgment on the pleadings be ALLOWED as to Plaintiff's claim for civil conspiracy.

IV.     CONCLUSION

For the foregoing reasons, I recommend that the motion for judgment on the pleadings be ALLOWED in part and DENIED in part.[8]  I recommend the motion be ALLOWED as to Counts I-VI against Bourque and as to Count XI of civil conspiracy against all defendants.  I recommend the motion be DENIED as to the rest of the Amended Complaint.


/s/ David H. Hennessy
David H. Hennessy
U.S. MAGISTRATE JUDGE

---

[8] The parties are notified that any party who objects to these proposed findings and recommendations must file a written objection thereto within fourteen days of service of this Report and Recommendation.  The written objections must identify with specificity the portions of the proposed findings, recommendations, or report to which objection is made, and the basis for such objections. See Fed. R. Civ. P. 72(b)(2).  The United States Court of Appeals for this Circuit has repeatedly indicated that failure to comply with Rule 72(b) will preclude further appellate review of the District Court's order based on this Report and Recommendation.  See, e.g., United States v. Diaz-Rosado, 857 F.3d 89, 94 (1st Cir. 2017); United States v. Lugo Guerrero, 524 F.3d 5, 14 (1st Cir. 2008); Keating v. Sec'y of Health & Hum. Servs., 848 F.2d 271, 275 (1st Cir. 1988); United States v. Valencia-Copete, 792 F.2d 4, 6 (1st Cir. 1986); Scott v. Schweiker, 702 F.2d 13, 14 (1st Cir. 1983); Park Motor Mart, Inc. v. Ford Motor Co., 616 F.2d 603, 605 (1st Cir. 1980); see also Thomas v. Arn, 474 U.S. 140 (1985).